BAIL FUND OF THE CIVIL RIGHTS CONGRESS OF NEW YORK, FREDERICK F. GREENMAN, LIQUIDATING TRUSTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 52209.  Filed June 8, 1956.

*William W. Owens, Esq.,* and *Robert E. Frisch, Esq.,* for the petitioner.

*Richard G. Maloney, Esq.,* and *Clarence P. Brazill, Esq.,* for the respondent.

FINDINGS OF FACT AND OPINION.

RAUM, *Judge:* The Commissioner determined deficiencies in income tax in the amounts of $87.65, $402.09, $419.72, and $4,174.36 for the years 1947–1950, plus 25 per cent additions to tax in the amounts of $21.91, $100.52, and $104.93 for the years 1947–1949 pursuant to section 291 (a) of the Internal Revenue Code of 1939.  A stipulation and two supplemental stipulations of facts filed by the parties are incorporated herein by reference as part of our findings.

The petitioner, Frederick F. Greenman, is liquidating trustee of the Bail Fund of the Civil Rights Congress of New York, appointed by an order of the Supreme Court of New York, New York County, in July 1952.

The Bail Fund of the Civil Rights Congress of New York (hereinafter referred to as Bail Fund) was originally organized under a somewhat different name pursuant to an agreement and deed of trust dated September 16, 1946.  It acquired its present name in 1947 when the agreement and deed of trust was rewritten without substantial change; that document was again rewritten without substantial change in 1949.

The Bail Fund was an unincorporated association run by a board of trustees, consisting of three trustees until 1949, when the member-

ship of the board was increased to five trustees. It was closely related to, but nevertheless distinct and separate from, the Civil Rights Congress, an organization designated as subversive by the Attorney General of the United States on October 21, 1948 (13 Fed. Reg. 6135), pursuant to Executive Order 9835 (12 Fed. Reg. 1935). The purpose of the Bail Fund appears to have been to furnish bail for persons held in custody in certain types of cases.

Two principal questions are presented for decision, first, whether certain contributions received by the Bail Fund constituted taxable income to it, and secondly, whether it sustained a deductible loss in 1949 by reason of forfeitures on two bail bonds aggregating $23,500 which it had furnished on behalf of Gerhart Eisler.

The principal sources of funds with which the Bail Fund carried on its operations were loans of Government bonds and cash which it solicited from various persons. In the case of Government bonds, the arrangements between the Bail Fund and the respective lenders contemplated the ultimate return of such bonds to the lenders together with such interest coupons as were applicable thereto; in the case of loans of money, the arrangements contemplated the ultimate return of the borrowed money without interest, with the understanding that the Bail Fund would keep such interest as was paid upon Government bonds in which it might meanwhile invest such borrowed money. A final source of funds was contributions solicited by the Bail Fund for its general purposes; such contributions were not to be returned, and were reported in the Bail Fund's income tax returns as "Paid-in or Capital Surplus." Such contributions were as follows for the years indicated:

| | |
|---|---|
| 1947 | $475. 00 |
| 1948 | 2, 400. 00 |
| 1949 | 3, 374. 00 |
| 1950 | 437. 50 |

The Commissioner's determination treated these amounts as income to petitioner. We think the Commissioner erred in this respect. The amounts in question were plainly contributions or gifts, and therefore not includible in gross income.

In 1947 a trustee of the Bail Fund deposited $20,000 in bonds with the clerk of the United States District Court for the Southern District of New York as bail for Gerhart Eisler in connection with two indictments pending against Eisler. In 1948 the Bail Fund deposited $3,500 in bonds with the clerk of the same court as bail on behalf of Eisler in connection with a habeas corpus proceeding. At about the time of each of these deposits, the Civil Rights Congress, by its administrative secretary on the first occasion and by its executive director on the second occasion, entered into indemnity agree-

ments to indemnify the Bail Fund with respect to any amount of bail declared forfeit by reason of Eisler's failure to appear as required. In May 1949 Eisler fled from the United States; he failed to appear in any of the proceedings involved; and has never returned to the United States. On May 17, 1949, the United States District Court for the District of Columbia declared the $20,000 bail forfeited and the Bail Fund satisfied the forfeiture by certified check in the amount of $20,000 in June 1949. On October 20, 1949, the United States District Court for the Southern District of New York ordered forfeiture of the $3,500 bail, which the Bail Fund satisfied by certified check in the amount of $3,500 in December 1949. In its income tax return for 1949 the Bail Fund deducted the $20,000 and $3,500 payments as losses. The Commissioner disallowed these deductions.

On November 17, 1953, petitioner instituted an action against the Civil Rights Congress in the Supreme Court of New York, New York County, to recover on the indemnity agreements. The answers filed by the Civil Rights Congress denied liability on the agreements, and asserted lack of authority on part of the persons who executed the agreements on its behalf. The matter was compromised by a tentative settlement agreement, on December 5, 1955, whereby the Civil Rights Congress was to pay $4,750, and that settlement was approved by the court on January 5, 1956.

The Civil Rights Congress has since denied that the matter was in fact compromised, and the $4,750 has not yet been paid. Early in February 1956 petitioner moved in the Supreme Court of New York, New York County, to enter judgment for $23,500 against the Civil Rights Congress by reason of its failure to pay the $4,750 on or before February 1, 1956, as contemplated by the compromise agreement. The motion was opposed on jurisdictional grounds as well as on the merits, and it was denied on February 27, 1956. Although the picture is far from clear as of the present time, we are satisfied and find as a fact that the loss arising out of the bail forfeitures with respect to Eisler did not occur in 1949. There were outstanding indemnity agreements upon the basis of which the Bail Fund had substantial claims against the Civil Rights Congress. Even though these claims were subsequently contested, they did not become worthless in 1949. We are cognizant of the fact that there were balance sheets of the Civil Rights Congress indicating insolvency in 1949, but so far as appears it was then still an active organization, and we cannot say that it might not have been able, from time to time, to obtain the necessary funds through solicitation campaigns of sufficient vigor, to meet its obligations on the indemnity agreements. The evidence shows that it did obtain a comparatively small amount of money for

that purpose in one campaign, but we do not know how vigorously that campaign was conducted or whether, viewed as of the end of 1949, it was not reasonable to assume that substantial additional amounts might not have been realized in possible later campaigns. There is nothing before us to indicate that such campaigns were not a usual and dependable source of funds for the Civil Rights Congress. Certainly, we cannot say that the claims became worthless in 1949. We sustain the Commissioner on this issue. To the extent that the 25 per cent additions to tax for late filing of returns are concerned, the parties have stipulated that the penalty "will properly be applicable to the deficiencies, if any, for 1947, 1948 or 1949."

*Decision will be entered under Rule 50.*